**DENNIS O. POSELEY**, 80535-008
Name and Prisoner/Booking Number

Satellite Prison Camp - Tucson
Place of Confinement

P.O. Box 24549
Mailing Address

Tucson, Arizona 85734-4549
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

```
┌─────────────────────────────┐
│      FILED        LODGED    │
│    RECEIVED       COPY      │
│ 4  ┌──────────────┐  4      │
│    │  SEP 3  2010 │         │
│    └──────────────┘         │
│   CLERK U S DISTRICT COURT  │
│     DISTRICT OF ARIZONA     │
│ BY                  DEPUTY  │
└─────────────────────────────┘
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **DENNIS O. POSELEY**, )<br>(Full Name of Plaintiff)   Plaintiff, )<br> )<br>                          vs.   )<br> )<br>(1)Lionel Craig Apker, Jr., Warden, )<br>(Full Name of Defendant)   )<br>(2)Dr. Altenberg, )<br> )<br>(3)Physician Assisstant Brutus, )<br> )<br>(4)Physician Assistant Perez, )<br>                    Defendant(s). )<br>[X] Check if there are additional Defendants and attach page 1-A listing them. ) | **CASE NO.** **CV 10-292 CKJ**<br>(To be supplied by the Clerk)<br><br><br>**CIVIL RIGHTS COMPLAINT**<br>**BY A PRISONER**<br><br>☐ Original Complaint<br>☐ First Amended Complaint<br>☐ Second Amended Complaint<br>**X Third Amended Complaint** |

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☒ 28 U.S.C. § 1331; <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).
    ☐ Other: _____

2.  Institution/city where violation occurred: <u>Satellite Prison Camp - Tucson, Arizona **and**</u>
    <u>LaTuna Camp, Anthony, Texas</u>

Revised 3/9/07                                     1                                     **550/555**

## ADDITIOINAL DEFENDANTS

(5)  Dr. Hagerty,

(6)  Dr. Longfellow,

(7)  Physician Assistant Dunnigan,

(8)  Physician Assistant Lawrence, and

(9)  Unit Manager, W.S. Baker.

**END**

## B. DEFENDANTS

1.   Name of first Defendant: <u>Lionel Craig Apker, Jr.</u>    . The first Defendant is employed as:
<u>Bureau of Prisons Warden</u>                at<u>United States Penitentiary – Tucson, Arizona</u>
(Position and Title) (Institution)

2.   Name of second Defendant: <u>Dr. Altenberg</u>    . The second Defendant is employed as:
<u>Bureau of Prisons Physician</u>          at<u>LaTuna Camp, Anthony, Texas</u>     .
(Position and Title) (Institution)

3.   Name of third Defendant: <u>Physician Assistant Brutus</u>   . The third Defendant is employed as:
<u>Bureau of Prisons Physician Assistant</u>     at<u>LaTuna Camp, Anthony, Texas</u>     .
(Position and Title) (Institution)

4.   Name of fourth Defendant: <u>Physician Assistant Perez</u>   . The fourth Defendant is employed as:
<u>Bureau of Prisons Physician Assistant</u>     at<u>LaTuna Camp, Anthony, Texas</u>     .
(Position and Title) (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?        ☐ Yes        ☒ No

2.   If yes, how many lawsuits have you filed? _____ . Describe the previous lawsuits:

    a.  First prior lawsuit:
       1.   Parties: _____ v. _____
       2.   Court and case number: _____.
       3.   Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
          _____.

    b.  Second prior lawsuit:
       1.   Parties: _____ v. _____
       2.   Court and case number: _____.
       3.   Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
          _____.

    c.  Third prior lawsuit:
       1.   Parties: _____ v. _____
       2.   Court and case number: _____.
       3.   Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
          _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## B. (ADDITIONAL) DEFENDANTS

5.   Name of fifth Defendant: Dr. Hagerty. The fifth Defendant is employed as: Bureau of Prisons Physician at Satellite Prison Camp, Tucson, Arizona.

6.   Name of the sixth Defendant: Dr. Longfellow. The sixth Defendant is employed as: Bureau of Prisons Physician at Satellite Prison Camp, Tucson, Arizona.

7.   Name of seventh Defendant: Physician Assistant Dunnigan. The seventh Defendant is employed as: Bureau of Prisons Physician Assistat at Satellite Prison Camp, Tucson, Arizona.

8.   Name of eighth Defendant: Physician Assistant Lawrence. The eighth Defendant is employed as: Bureau of Prisons Physician at Satellite Prison Camp, Tucson, Arizona.

9.   Name of ninth Defendant: W. S. Baker. The ninth Defendant is employed as: Bureau of Prisons Unite Manager at Satellite Prison Camp, Tucson, Arizona.

**END**

**D. CAUSE OF ACTION**

## COUNT I

1. State the constitutional or other federal civil right that was violated: <u>Fifth, Eighth and Fourteenth Amendments to the United States Constitution.</u>

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☒ Medical care

☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation

☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Shortly following Plaintiff's 10-02-2006 incarceration at LaTuna Camp, Texas, Plaintiff Poseley initiated a continuous series of "Sick Call" appointments, complaining of progressive and persistent LEFT HIP pain, accompanied by increasing loss of ability to stand straight (decreasing vertical plane accoutrement). The LaTuna Medical Staff recommendation was to "walk more", despite Poseley having previously advised Medical Staff he was already walking **+10 miles per day!** Finally, after numerous requests by Poseley, on 10-19-2007, Dr. Altenberg and Physician Assistant (PA) Brutus, arranged for Plaintiff Poseley to be examined by an outside Medical Diagnostic Specialist for diagnosis and treatment recommendations.

   The resulting written report given to LaTuna Medical Staff determined Poseley's LEFT HIP was riddled with severe osteoarthritic degeneration and by any community standards required immediate hip replacement surgery and months of specific rehabilitation. On 11-06-2007, Dr. Altenberg signed (without question or comment) the written report diagnosis requiring immediate surgery and rehabilitation recommendation.

   [Continued on PAGE 3A]

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s). CLEARLY knowing above Dr.'s Altenberg, Hagerty and Longfellow, with PAs Brutus, Perez, Dunnigan and Lawrence are deliberately indifferent refusing Poseley immediate hip replacement surgery and given the <u>untreatable</u> continual pain shows an "unnecessary and wanton infliction of pain" onto Plaintiff. ALL acted with deliberate indifference regards Poseley's <u>DOCUMENTED</u> serious medical needs.

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No

   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No

   c. Did you appeal your request for relief on Count I to the highest level? ☐ Yes ☒ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. <u>Such an appeal would be FUTILE (Apker LIED in **only** response) and plaintiff's injuries are progessively degenerating any further delay is causing irreparable harm regards exhaustion.</u>

3

## COUNT I
[continued]

Dr. Altenberg & PA Brutus(later replaced by PA Perez) chose to ignore the required surgery and rehabilitation; instead, starting(approximately) 11-6-2007, prescribed **Naproxen** for pain and anti-inflamation. However, anyone with access to Plaintiff's documented ulcerative colitis (for which Dr. Altenberg was directly treating Poseley) with the exercise of even remedial pharmaceutical due diligence would have known to NOT prescribe **Naproxen** as a known side effect is the potential for "bleeding ulcers." [**Refer** **COUNT III** documenting Dr. Altenberg, PA Brutus/Perez prescription of an ADDITIONAL bleeding ulcer "accelerant" **Prednesone** directly resulting in further significant injury requiring EMERGENCY surgery during which as the **direct** result of Altenberg/Brutus/Perez deliberate indifference Plaintiff during his 2/11/09 emergency surgery clinically DIED TWICE!)]

Plaintiff Poseley's diagnosed hip condition was(is) a degenerative condition, accompanied with accelerating pain (out of "10" this is 8-9), further requiring Plaintiff to compensate for even the most basic of motor skills (routinely taken for granted). This has resulted in continuing increase in back spasms, RIGHT KNEE trauma, neck and spine deformity, instability when "attempting" to traverse moving place to place, endangering his ability to accomplish even the most basic menial skills required to survive on a daily basis. But for a few short walks to eat, to the bathroom, to shower, to laundry, and the library, Poseley is bed ridden; a crippled invalid, recognized by Satellite Prison Camp Tucson Bureau of Prisons' Medical Dr. Longfellow, DO requiring Plaintiff's official "WORK" status for the next **YEAR** registered as "Convalescence", despite SPC Tucson, as a "Work Camp," **requiring** ALL inmates to WORK!

The deliberate indifference of Dr. Altenberg, PAs Brutus & Perez continued until Plaintiff's July 13, 2009 transfer to SPC, Tucson. However, despite knowing of his condition Dr.s Hagerty and Longfellow have persisted in unnecessary protracted delays. In short, instead of the prescribed surgery and rehabilitation previously established, insisted that Plaintiff be subjected to the same "delay, defer and deny" as though NO diagnosis and treatment recommendation had EVER been completed and accepted by the Bureau of Prisons. Hagerty & Longfellow recommended Poseley be examined AGAIN and arranged for an outside Contract Orthopedic Surgeon diagnoses and recommend treatment. **HOWEVER**, this process required almost **ONE YEAR** from the date of Poseley's 7/13/09 arrival until the 6/17/10 Dr. Jabczenski, Orthopedic Specialist appointment. All this time Hagerty/Longfellow knew with the exercise of due diligence of Plaintiff's increasing pain and crippling effect of his DEGENERATIVE HIP CONFIRMED DIAGNOSIS. Further due diligence of facts close to the surface, would have obviously advised Hagerty/Longfellow of Poseley's **ZERO** tolerance for any pain and/or anti–inflammatory medications. A wanton infliction of pain, suffering and crippling effect have occurred as a result of Hagerty/Longfellow deliberate indifference. This is especially egregious behavior given Plaintiff Poseley's documented attempts to describe and advise Hagerty/Longfellow, PA's Dunnigan & Lawrence of his level of pain – on a scale of 1–10 noted at a **constant** 8–9.

Dr. Jabczenski's 6/17/10 written recommendation was EXACTLY the same as THREE YEARS PREVIOUS – severe LEFT HIP osteoarthritic degeneration (now BONE ON BONE) and under any community standards the **ONLY** treatment is **immediate** hip replacement surgery with a long specific rehabilitation.

Poseley's pain cannot be relieved via medication, and a degenerative osteoarthritic hip requires no other continuing treatment except **immediate** hip replacement surgery.

## COUNT II

1. State the constitutional or other federal civil right that was violated: <u>Fifth, Eighth and Fourteenth Amendments to the United States Constitution.</u>

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.

   ☐ Basic necessities    ☐ Mail    ☐ Access to the court    ☒ Medical care
   ☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion    ☐ Retaliation
   ☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   While incarcerated at LaTuna Camp, Texas, Plaintiff Poseley when requested to STAND for the FOUR O'CLOCK COUNT immediately passed out. PA Brutus was summoned to the living quarters and transported Poseley via wheelchair to be examined at "medical." Following a cursory exam, Poseley was advised and ordered by PA Brutus to walk back to his housing unit despite Plaintiff's documented episodes of "passing out" from ulcerative colitis attacks. As Plaintiff Poseley was returning to his housing unit **AGAIN** had an ulcerative colitis attack, passing out, <u>except</u> this time he landed <u>with his RIGHT LEG TRAPPED</u> beneath the ENTIRE (dead) weight of his body, seriously injuring his RIGHT KNEE.

   Within one week of this incident, on 11-28-2007, Dr. Altenberg and PA Brutus scheduled Plaintiff to outside consultation services for his RIGHT KNEE. This report concludes the right knee has tricompartmental osteoarthopathy degeneration. Despite Dr. Altenberg and PA Brutus's treating Plaintiff for his ulcerative colitis, knowing with exercise of even remedial pharmaceutical due diligence the side effects of **Naproxen** includes the exasperation of "bleeding ulcers, prescribed **Naproxen** for pain and inflammation. **Refer COUNT I** again prescribing **Naproxen**
   **[continued on PAGE 4A]**

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s). CLEARLY knowing above Dr.'s Altenberg, Hagerty and Longfellow with PAs Brutus, Perez, Dunnigan and Lawrence are deliberately indifferent, refusing Poseley all medical care regards his RIGHT KNEE (and its "fleshy mass" and given the untreatable ~~continual increasing pain shows an "unnecessary and wanton infliction of pain"~~ onto Plaintiff. ALL acted with documented deliberate indifference regards Poseley's

5. **Administrative Remedies. DOCUMENTED** serious medical needs.

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☒ Yes   ☐ No

   b. Did you submit a request for administrative relief on Count I?    ☒ Yes   ☐ No

   c. Did you appeal your request for relief on Count I to the highest level?    ☐ Yes   ☒ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Such an appeal wold be FUTILE (Apker LIED in **only** response) and plaintiff's injuries are progressively degenerating, any further delay regards exhaustion would cause additional irreparable harm.

4

### COUNT II
[continued]

Following the 11-28-2007 consultation and continuing until 3-21-2008, Poseley complained directly to Dr. Altenberg and PA Brutus that his RIGHT KNEE pain was increasing and of a possible "strained RIGHT KNEE tendon." Altenberg/Brutus advised Plaintiff they were ordering an ultra sound of his RIGHT LEG to be completed by an outside contract clinic. They indicated to Plaintiff a suspicion a "blood clot" was causing his pain. The ultra sound report, in fact, disclosed a sprain of the RIGHT KNEE TENDON. Additionally, a "fleshy mass" was discovered "behind" the RIGHT KNEE. On March 24, 2008, Dr. Altenberg signed off on this ultra sound report and it's findings. Despite acknowledging the written reports requirement for a follow-up visit in 2-3 days, Altenberg chose instead to ignore this and no follow-up appointment was ever attempted or completed.

The failure to treat Plaintiff Poseley, directly resulted in further significant injury, as Plaintiff cannot progressively straighten his RIGHT knee, requires assistance placing his shoes on his feet, is unstable when attempting to travel even short distances (despite the terrain being flat and smooth), and has increasing pain in front and behind his knee.

After numerous direct complaints to Dr. Altenberg regarding the "mass" behind the RIGHT KNEE, in May, 2008, Altenberg ordered an outside medical service perform an MRI. However, when Plaintiff Poseley requested the results of the MRI he has been refused a copy. Finally, with clear deliberate indifference Altenberg declared and advised Poseley, despite his pain and obvious serious RIGHT KNEE injury it would not be fixed, therefore, Altenberg REFUSED to (NEVER) order(ed) a copy of the MRI results.

Altenberg, Brutus and Perez's deliberate indifference has directly resulted in Poseley's progressively crippling RIGHT KNEE condition resulting

in unnecessary and wanton continuous pain, unable to walk but short distances and unable to flex his knee (in fact, the RIGHT KNEE continues to deform now "frozen" with an approximate 15 degree forward angle causing material instability).

Following Poseley's July 13, 2009 transfer to SPC Tucson, he's made numerous direct requests of Dr.'s Hagerty and Longfellow and PAs Dunnigan and Lawrence, for immediate medical attention to (repair) his RIGHT KNEE medical staff have refused to do so. Further, on 6/17/10 Plaintiff was examined by an Jabczenski, MD, Orthopedic Specialist. Jabczenski advised Poseley that the RIGHT KNEE has accelerated degeneration. Despite multiple DIRECT requests of Dr. Hagerty and Longfellow & PAs Dunnigan and Lawrence and Ms. English of Medical Records, they ALL have deliberately refused to provide Plaintiff with a copy of this specific report. Plaintiff made written requests for this(and other) medical records on June 2 & 26, 2010, however, as of the date of this filing the Medical Staff has refused to respond to Plaintiff Poseley's not unreasonable requests.

Clearly knowing the above, Dr.'s Altenberg, Hagerty and Longfellow combined with PAs Brutus, Perez, Dunnigan and Lawrence are deliberately indifferent, refusing Poseley medical care regards his RIGHT KNEE and treatment of the "fleshy mass" behind the Right Knee. Given the untreated continually increasing pain shows an "unnecessary and wanton infliction of pain" onto Plaintiff and they have ALL acted with documented deliberate indifference regards Poseley's DOCUMENTED serious medical needs.

## COUNT III

1.   State the constitutional or other federal civil right that was violated: <u>Fifth, Eighth and</u>
<u>Fourteenth Amendments to the United States Constitution.</u>

2.   **Count I**. Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
  ☐ Basic necessities       ☐ Mail          ☐ Access to the court    ☒ Medical care
  ☐ Disciplinary proceedings  ☐ Property      ☐ Exercise of religion    ☐ Retaliation
  ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3.   **Supporting Facts**.  State as briefly as possible the FACTS supporting Count I.  Describe exactly what
**each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without
citing legal authority or arguments.

   When Plaintiff Poseley was 19 years old he contracted ulcerative colitis.
He is now 65 years old. Despite Poseley being seriously ill with ulcerative
colitis, once it was under control he did **NOT** have another episode until
his 10-02-2006 incarceration at LaTuna Camp, Texas.
   Starting in approximately September, <u>2007</u>, plaintiff was being treated
for his ulcerative colitis by Dr. Altenberg, PA Brutus and PA Perez. Despite
the exercise of even remedial pharmaceutical due diligence instructing
that the known side effects of **Naproxen** is the potential of "bleeding ulcers,"
Dr. Altenberg, PA Brutus and PA Perez prescribed and administered **Naproxen**
to Plaintiff Poseley starting on November 6, 2007, for pain and inflammation
control associated with his severe osteoarthritic degeneration of his HIP
and KNEE. **See COUNT I & II**
   In, or around, September, <u>2008</u>, while working for Unicor Prison Industries,
Plaintiff (and several other inmates) contracted a "RASH." Plaintiff's
started on his ankle. Despite approximately EIGHT written requests to "medical"
over a TWO MONTH period, Plaintiff was DENIED access to any medical care.
Finally, PA Perez was appointed to examine Poseley's RASH which by this
time had spread to BOTH legs, BOTH arms and plaintiff's back. The RASH
[continued PAGE 5A]

4.   **Injury**. State how you were injured by the actions or inactions of the Defendant(s).
   As a direct result of these unnecessary emergency surgeries and resulting
procedures Not only is Poseley REQUIRED to medicate himself for the rest
of his life, he is required to arrange a B-12 shot at least once per month,
[continued PAGE 5E]

5.   **Administrative Remedies:**
  a.   Are there any administrative remedies (grievance procedures or administrative appeals) available
      at your institution?                                               ☒ Yes  ☐ No
  b.   Did you submit a request for administrative relief on Count I?              ☒ Yes  ☐ No
  c.   Did you appeal your request for relief on Count I to the highest level?     ☐ Yes  ☒ No
  d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why
      you did not. Such an appeal would be FUTILE (Apker LIED in **only** response) and
plaintiff's injuries are progressively degenerating, any further delay regards
exhaustion would cause additional irreparable harm.

5

## COUNT III
[continued]

was BRIGHT red, would become dry, flaky and crack Poseley's skin, leaving

his garments with constant blood stains. Given the deliberate indifference

shown to Plaintiff Poseley, Dr. Altenberg and PA Perez were forced to medicate

Plaintiff, prescribing **Prednesone**. The exercise of remedial pharmaceutical

due diligence would have instructed medical staff that, identical to **Naproxen**,

a side effect of this medication is "bleeding ulcers." Topical cream was

the ONLY treatment required to dissipate the rash of the inmates seen timely,

however, **Prednesone** was prescribed along with the topical cream, as the

RASH, unlike those inmates who were timely provided medical care, covered

the majority of Poseley's body. [It is critical to note that Plaintiff

Poseley was now ingesting **BOTH** **Naproxen** & **Prednesone**.]

Starting in late October **2008**, Plaintiff began to complain to medical

of overall physical distress and illness. Severe stomach pain and continual

constipation. Plaintiff would go 2-3 days without a bowel movement. No

matter how many times plaintiff complained to Dr. Altenberg and PA Perez

he was completely ignored. With the exercise of due diligence Dr. Altenberg

and PA Perez knew or should have known that a person with ulcerative colitis

rarely has constipation.

Following numerous unanswered requests, medical finally, on 1-30-

**2009**, administered a blood test with astonishing results. Plaintiff was

clearly in medical distress. Poseley was clearly and severely anemic, when

coupled with his other recent constipation complaints Poseley was obviously

bleeding internally. On 2-3-**2009**, Dr. Altenberg certified these results

and advised Plaintiff that a specialist would see Poseley sometime in the

next THREE MONTHS! [However, Poseley's medical records confirm that **NO**

**SUCH APPOINTMENT WAS EVER MADE**!]

5A

Instead, **6 days later**, on February 9, <u>2009</u>, Plaintiff, while working at Unicor Prison Industries, <u>passed out</u> and began to <u>throw up</u> copious volume of <u>blood</u>. This continued throughout the ENTIRE morning until Poseley was taken by ambulance to Providence Hospital in El Paso, Texas. Plaintiff continued to <u>throw up blood</u> for the remainder of the day into the next morning, February 10, <u>2009</u>. Finally, the hospital medical staff performed an Endoscope, attempting to "CLIP" the ulcers in Poseley's stomach. This procedure was <u>not</u> successful and Poseley continued to BLEED.

On February 11, 2009, Poseley's condition was determined to be <u>life threatening</u>, requiring emergency surgery. The private practice surgeon, Dr. Clapp, was forced to remove approximately **ONE-HALF** of plaintiff's stomach and a significant portion of plaintiff's duodenum. Shortly after surgery, Dr. Clapp advised Plaintiff Poseley that he had performed this **RADICAL** procedure FIVE TIMES, but so far, only **Mr. POSELEY** had survived the surgery! In fact, Dr. Clapp expressed his surprise regards Poseley, advising plaintiff that Poseley "Clinically Died!" **TWICE** on the operating table!  Further, he made it clear that plaintiff's serious medical condition, requiring emergency surgery, was the <u>direct</u> result of someone with documented ulcerative colitis being prescribed **Naproxen** and/or **Prednesone**. He made it clear neither of these drugs are to EVER be ingested by someone [like Poseley] with documented ulcerative colitis. Lastly, Dr. Clapp made sure plaintiff understood that had Poseley been seen by the hospital before he "went critical," surgery would probably **NOT** have been required. Plaintiff Poseley required the support of hospital's Intensive Care Unit for 2½ weeks, followed by confinement in the Long Term Care Unit for 3 weeks, a total of <u>38</u> days (5½ weeks)! In fact, LaTuna Camp officially "MEDICALLY FURLOUGHED" Poseley to the Providence Hospital/Long Term Care Unit!

While "Medically Furloughed" to Providence Hospial Intensive and Long Term Care Units, Poseley's Gall Bladder failed, requiring removal of 544 cc's of fluid – noted by the attending physician as a "RECORD" amount of extracted fluid!  A "Drain Bag" was inserted and <u>not</u> removed until the day before plaintiff was returned to prison. While in Long Term Care Unit, Poseley developed a Right Thigh Blood Clot requiring additional medications and automated rehabilitation equipment.

Both the Gall Bladder failure and development of Right Thigh Blood Clot prevented any of the 2-3 months of POST-SURGICAL rehabilitation required by Dr. Clapp to assure Poseley an opportunity for a reasonable recovery. In fact, Dr. Clapp and the Gall Bladder attending physician advised Poseley that if he stayed in the Intensive Care Unit for more than two days he would loss 40% of his muscle mass and most of his motor skills. In fact, Plaintiff lost at least the 40% of muscle mass and could not even walk once given permission to move around within his Long Term Care room! NO REHABILITATION was ever attempted, let alone provided. Lastly, from February 9, 2009 – March 17, 2009 plaintiff received some **14 units of BLOOD!**

As a direct result of these unnecessary emergency surgeries and resulting procedures Not only is Poseley REQUIRED to medicate himself for the rest of his life, he is required to arrange a B-12 shot at least once per month, as B-12 is produced in the stomach, Poseley's was cut out. The <u>**MOST**</u> serious is that Plaintiff has been advised that his risk of Cancer has increased AT LEAST 50%. Additionally, his mortality has been <u>reduced</u> anywhere from 5-10 years, a DIRECT RESULT of this unnecessary surgery and additional resulting procedures.

Upon Poseley's return to LaTuna Prison Camp, Plaintiff made numerous requests of medical staff regards Dr. Clapps' required rehabilitation. PA Perez eventually responded, informing plaintiff that LaTuna Medical does not provide nor will they be involved with any rehabilitation.

With the exercise of even remedial pharmaceutical due diligence, Dr. Altenberg and PA Perez would have known to NOT prescribe **Naproxen** and/or **Prednesone** to Poseley, given his significantly documented, long ago diagnosed ulcerative colitis, given BOTH medications have clearly published side effects of causing bleeding ulcers. Poseley's ulcerative colitis (bleeding ulcers in the bowels) forbids prescribing **Naproxen** AND/OR **Prednesone**. In fact, TWO separate contract Gastrologists (<u>First</u>, July 1, 2009 in El Paso, Texas; <u>Second</u>, October 29, 2009 Dr. Ayaaz Ismail, MD of Tucson, Arizona) have noted to Poseley's medical file that the most probably cause for his emergency surgery was the ingestion of nonsteroidal medications, e.g. the ONLY medications Poseley was prescribed were **Naproxen** and **Prednesone**, BOTH fitting this description, which as noted, lead <u>directly</u> to Poseley's bleed out [**Refer COUNT IV**'s disclosure of TWO contract Gastrologist conclusions following review of Poseley and his medical files] and subsequent loss of **ONE-HALF** of his stomach and duodenum.

That BOTH Dr. Altenberg and PA Perez <u>ignored</u> Plaintiff's 1-30-2009 blood test administered by their own medical staff is documented deliberate indifference, resulting in further significant injury and lifelong resultant unnecessary and wanton infliction of pain regards Poseley's obvious specific serious medical need(s). In short, Dr. Altenberg and PA Perez acted with deliberate indifference to Poseley's unambiguous serious medical need(s); in fact, it is not unreasonable to conclude that Altenberg/Perez knowing with the exercise of due diligence that they were harming Poseley, delayed until he was critical to transfer him to an outside medical provider. Then upon his return continued their deliberate indifference, knowing but ignoring the required rehabilitation prescribed by Poseley's surgeon, Dr. Clapp. This Deliberate Indifference has now guaranteed another surgery to repair the ventral hernia and the resulting rehabilitation. (**See COUNT IV**) Clearly

Altenberg/Perez failed to respond to Poseley's pain and medical need and Poseley was seriously harmed by the indifference. Frankly, their are no other likely explanations.

Plaintiff Poseley as a direct result of this denial of appropriate rehabilitation, faces, at least, THREE more serious surgeries and years of rehabilitation (assuming he survives the surgeries). Without the surgeries he will remain a progressively degenerating crippled invalid living his remaining years in <u>untreatable</u> continually increasing pain!

**<u>INJURY</u>**
[continued]

as B-12 is produced in the stomach, Poseley's was cut out. The **<u>MOST</u>** serious is that Plaintiff has been advised that his risk of Cancer has increased AT LEAST 50%. Additionally, his mortality has been <u>reduced</u> anywhere from 5-10 years, a DIRECT RESULT of this unnecessary surgery and additional resulting procedures.

Dr. Altenberg and PA's Brutus and Perez prescribing nonsteroidal medications **<u>Naproxen</u>** and **<u>Predneson</u>** is the main if not sole cause emergency surgery. BOTH these medications lead <u>directly</u> to Poseley's bleed out and subsequent/direct loss of **<u>ONE-HALF</u>** of his stomach and duodenum.

That BOTH Dr. Altenberg and PA Perez **<u>ignored</u>** Plaintiff's 1-30-2009 blood test administered by their own medical staff is documented deliberate indifference, resulting in further significant injury and lifelong resultant unnecessary and wanton infliction of pain regards Poseley's obvious specific serious medical need(s). In short, Dr. Altenberg and PA Perez acted with deliberate indifference to Poseley's unambiguous serious medical need(s); in fact, it is not unreasonable to conclude that Altenberg/Perez knowing with the exercise of due diligence that they were harming Poseley, delayed until he was critical to transfer him to an outside medical provider. Then

5E

upon his return continued their deliberate indifference, knowing but ignoring the required rehabilitation prescribed by Poseley's surgeon, Dr. Clapp. This Deliberate Indifference has now guaranteed another surgery to repair the ventral hernia and the resulting rehabilitation. (**See COUNT IV**) Clearly Altenberg/Perez failed to respond to Poseley's pain and medical need and Poseley was seriously harmed by the indifference. Frankly, their are no other likely explanations.

Plaintiff Poseley as a direct result of this denial of appropriate rehabilitation, faces, at least, THREE more serious surgeries and years of rehabilitation (assuming he survives the surgeries). Without the surgeries he will remain a progressively degenerating crippled invalid.

## COUNT IV

1.  State the constitutional or other federal civil right that was violated:  <u>Fifth, Eighth and Fourteenth Amendments to the United States Constitution.</u>

2.  **Count I**. Identify the issue involved.  Check **only one**.  State additional issues in separate counts.

    ☐ Basic necessities     ☐ Mail     ☐ Access to the court     ☒ Medical care

    ☐ Disciplinary proceedings     ☐ Property     ☐ Exercise of religion     ☐ Retaliation

    ☐ Excessive force by an officer     ☐ Threat to safety     ☐ Other: _____

3.  **Supporting Facts**.  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

    On March 17, 2009, Poseley returned to LaTuna Prison Camp following a **38 day emergency hospitalization**. Given the life threatening nature of Poseley's emergency <u>radical</u> medical procedures, with the exercise of due diligence, Dr. Altenberg & PA Perez knew Plaintiff <u>required</u> post emergency surgery rehabilitation. Instead, PA Perez advised Poseley that despite LaTuna Prison Camp Medical knowing of the surgeons' (Dr. Clapp) requirement for rehabilitation, refused and therefore, failed to provide Poseley any rehabilitation. Despite Poseley's numerous formal requests of LaTuna Prison Camp Medical, in lieu of any formal specific rehabilitation, Poseley was advised by PA Perez to "walk" and "drink fluids." While walking, Plaintiff developed a **Ventral Hernia**. This hernia is the **direct** result of Altenberg/Perez's deliberate indifference; now requiring major surgery and protracted rehabilitation. [the size of the hernia has grown, extending from sternum to belly button and bulges outward approximately 6-7 inches and 11-12 inches across!]


    **[continued 6A]**

4.  **Injury**.  State how you were injured by the actions or inactions of the Defendant(s).

    <u>The hernia developed as a direct result of Dr. Altenberg and PA Perez's deliberate indifference, their knowing, but refusing to provide the required post-surgery rehabilitation. Continuing and compounding this deliberate</u>

    **[continued 6C]**

5.  **Administrative Remedies:**

    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☒ Yes    ☐ No

    b.  Did you submit a request for administrative relief on Count I?     ☒ Yes    ☐ No

    c.  Did you appeal your request for relief on Count I to the highest level?     ☐ Yes    ☒ No

    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. <u>Such an appeal would be FUTILE (Apker LIED in **only** response) and plaintiff's injuries are progressively degenerating, any further delay reagrds exhaustion would cause additional irreparable harm.</u>

6

## COUNT IV
(continued)

Plaintiff's (hernia)intestines bulge out of his body. Prison meals consist primarily of carbohydrates, hence, Poseley is forced to "massage" his bulging intestines in order to pass(force) the food stuffs into his final digestive process. Otherwise, following each meal, the increasing pain from his then "rock hard" bulging intestines pushes Poseley's intestine further out away from his body.

On July 13, 2009, Plaintiff was transferred to Satellite Prison Camp Tucson(SPC). His Bureau of Prisons(BOP) calculated "Medical Care Level" was III, requiring Poseley be interviewed/examined by a physician at least monthly. However, plaintiff was **not** examined by a physician until October 9, 2009. BOTH SPC Dr. Hagerty and Longfellow advised Plaintiff that his hernia would **NOT** be repaired. This refusal was "justified" based upon the premise that any repair of Poseley's hernia carried a high risk of reoccurrence. The SPC Medical Utilization Review Committee (URC) concurred, advising Poseley that Dr. Hagerty could "handle" Plaintiff's hernia "locally"(within the institution). Since, October 9, 2009, Dr. Hagerty has **NEVER** again seen nor scheduled Poseley to personally examine his hernia!

On August 19, 2009, Plaintiff's wife retained MPM GROUP to assist with all required BOP Administrative Remedy paperwork filings. However, when letters were exchanged with SPC Warden Lionel Craig Apker, Jr., he informed MPM GROUP SPC Unit Manager Baker had been assigned to directly take charge of plaintiff's ongoing health care needs. Additionally, Apker assured MPM GROUP that ALL of Poseley's health care needs are on track. However, despite this "hollow" assurance, with the exercise of due diligence Apker knew (1) NOTHING was being done; (2) SPC Medical had FAILED their internal audit – "Health Services Program Review, January 15, 2010", otherwise

noting, "**Due to the serious and pervasive number of findings identified thus far during this program review, a determination has been made to discontinue the review process." In short, FCC/SPC Tucson Health Care Services are so seriously deficient that they clearly rise to the level of <u>deliberately indifferent treatment</u>, endangering the entire inmate population, including, but not limited to Poseley's serious medical needs – and (since Apker's "fantasy" regards Poseley's documented previously determined medical care needs) (3) SPC Medical has FAILED their Western Regional Office REVIEW (conducted the week of August 2, 2010)!

Despite **ALL** required Administrative Remedy Request filings (including the BP-9 request of SPC) Warden Apker, despite utilizing his AUTOMATIC 20 day extension granted STAFF when responding to an Inmate REQUEST, **LIED** to Poseley, to wit: Apker's written/recorded April 9, 2010 BP-9 response, advised Poseley SPC Tucson Medical URC had **APPROVED** his hernia surgery. This despite and opposite URC's October 27, 2009 written determination that Plaintiff hernia would be "handled locally by Dr. Hagerty." PLUS, on January 12, 2010, Dr. Longfellow, absent any examination, advised Poseley that his hernia would **NOT** be taken care of by SPC Medical. Finally, on June 10, 2010, the URC reported to plaintiff SPC Medical Staff would "continue to review the [hernia]matter."

Warden Apker and Unit Manager Baker see Poseley at least weekly and have NEVER once asked plaintiff regards his health care needs. In fact, Unit Manager Baker, shortly after being ordered by Warden Apker to oversee and secure Poseley's health care needs be timely met, advised plaintiff during his subsequent TEAM MEETING, "I don't know anything about medical. So, I "two-hole punched" the Wardens' letter that placed me in charge and filed it in your[Poseley's] Central Inmate File." Baker has done **nothing** since her "two-hole punch" effort!

Interestingly (and certainly **NOT** coincidentally), on May 24, 2010,

Warden Apker was served with Plaintiff's May 25, 2010 Civil Rights Action.

Shortly following this litigation being served upon Apker, SPC Dr. Longfellow,

outside the chain of command requiring an inmate be placed upon a list

(CALL OUT) first, summoned Poseley into the SPC Sick Call Clinic Office

whereby based upon no new facts, circumstances or requests, and absent

any further physical medical exam, authoritatively concluded "We(BOP) have

to take care of that[Poseley's] hernia <u>immediately</u>!" However, BOP's URC

did **NOT** agree, determining instead on June 10, 2010 that Plaintiff's hernia

would instead be continued to be "monitored locally!" by SPC Tucson Medical

Staff.

### **INJURY**
(continued)

indifference Dr.s Hagerty and Longfellow of SPC knows BOP caused the hernia,

but have refused to repair it. Additionally, Apker with exercise of due

diligence knew but instead chose to deliberately LIE to Poseley knowingly

placing a STAFF member in charge of Poseley's serious medical care needs

who has no knowledge of medical and is in short incompetent and readily

self-admits to her incompetence. This deliberate indifference  has directly

caused progressively increasing unnecessary and wanton infliction of pain.

Week after week, Apker and Baker SEE Poseley and his grotesque intestines

BULGING out him 6-7 inches and a foot wide and deliberately chose to be

indifferent to his serious medical needs.

LaTuna Prison Camp's Dr. Altenberg and PA Perez are deliberately indifferent

refusing required rehabilitation, advising walking and water in it's stead.

Dr.'s Hagerty & Longfellow along with Warden Apker and Unit Manager Baker

continue deliberate indifference refusing Poseley's hernia surgery knowing

his <u>untreatable</u> continual pain shows an "unnecessary and wanton infliction

of pain" onto Plaintiff Poseley.

## COUNT V

1. State the constitutional or other federal civil right that was violated: <u>Fifth, Eighth and Fourteenth Amendments to the United States Constitution.</u>

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities  ☐ Mail  ☐ Access to the court  ☒ Medical care
☐ Disciplinary proceedings  ☐ Property  ☐ Exercise of religion  ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Any one, or all, of Counts 1, 2, 3 & 4 may <u>not</u> rise to the high standard required for a plausible claim for relief regards deliberate indifference. However, accumulative review of Counts 1, 2, 3 & 4 is a context-sensitive task requiring the below chronology to clearly allege an affirmative link between injury to Poseley and defendants overarching conduct. The intimate chronological interweave between and among the various defendants actions resulted in further significant injury and unnecessary and wanton infliction of pain acting with deliberate indifference knowing of and disregarding excessive risks to Poseley's specific serious medical needs.

"Further significant injury and unnecessary and wanton infliction of pain" includes but is not limited to:
(A) Mortality lessened 5-10 years;
(B) 50% increase/exposure to risk of cancer;
(C) Progressive physical and psychological crippling invalid (self-admitted by Bureau of Prisons determination Plaintiff Poseley's Work Status for the next year has been documented/determined to be "CONVALESCENCE!");
(D) Daily increase of level of pain and loss of motor skills;
**[CONTINUED PAGE 7A]**

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s). Altenberg, Brutus, Perez, Hagerty, Longfellow, Dunnigan, Lawrence, Apker and Baker's overarching continuous deliberate indifference, knowing of and disregarding Poseley's documented excessively serious medical risks, <u>directly</u> resulted in further significant injury and unnecessary and wanton infliction of pain. Specifically refer to "(A-E)" ("Supporting Facts" above), detailing Poseley's continuing "injury" & "pain

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. <u>Such an appeal would be FUTILE (Apker LIED in **only** response) and plaintiff's injuries are progressively degenerating, any furhter delay reagrds exhaustion would cuase additional irreparable harm.</u>

## COUNT V
[continued]

(E) At age 65 Plaintiff now faces THREE MAJOR surgeries and all protracted rehabilitation; and

(F) Poseley sustained further significant injuries(and unnecessary and wanton infliction of pain) as a direct result of deliberate indifference. Given Poseley's extremely tenuous health status(direct link to deliberate indifference) ONLY after Plaintiff's THREE SERIOUS SURGERIES' rehabilitation can approriate professional competent evaluation be conducted to ascertain permanent damage done to Poseley's quality of life prognosis. In short, what daily living assistance will Poseley require following THREE surgeries and MONTHS of rehabilitation?

Identified defendants in Counts 1, 2, 3 & 4 medical deliberate indifference were the predominate (if not sole) causation for Plaintiff REQUIRED Emergency Medical Attention, to wit:

1.   **IF** Dr. Altenberg and PA Brutus had **NOT** ignored Poseley's pleas to treat his ulcerative colitis in September, 2007, the condition would not have metastasized into numerous anemia induced blackouts.

2.   **IF** Dr. Altenberg and PA Perez had taken the advice of outside diagnosis and repaired Poseley's LEFT HIP and RIGHT KNEE when diagnosed on 10/10/07, 11/28/07 and not caused Poseley to pass out due to lack of appropriate ulcerative colitis medication, Plaintiff would **NOT** have been prescribed **Naproxen**.

3.   **IF** the RASH on Poseley's RIGHT ANKLE had been timely treated, instead of his requests being ignored for two months, deliberate indifference of Dr. Altenberg and PA Perez, Plaintiff would not have been prescribed **Prednesone**.

4.   **IF** Dr. Altenberg and PAs Brutus and Perez would have exercised a remedial amount of pharmaceutical due diligence, they would know that **Naproxen** and/or

<u>Prednesone</u> individually or in (deadly) combination causes anyone(like Poseley) with documented ulcerative colitis, critical bleeding ulcers (and are not be prescribed under any circumstances).

5.   <u>**IF**</u> Dr. Altenberg and PA Perez would not have ignored Poseley's blood test results of 2/3/09, instead, followed appropriate community standards, plaintiff would have been immediately taken to an outside(Contract) Gastrologist for diagnosis and treatment.

6.   <u>**IF**</u> Dr. Altenberg and PAs Brutus and Perez had not deliberately failed to arrange the required* annual colonoscopy for Plaintiff Poseley caused their ignoring 2/3/09 blood test screaming warning of significant injury in #5 above and deliberate indifference of ignoring Poseley's continual complaints of "stomach pain" resulting in unnecessary and wanton infliction of pain. <u>**Refer**</u> #7 Below  *[This 2/3/09 blood test was some **2 years 4 months** **AFTER** Poseley's October 2, 2006 incarceration at LaTuna Camp, Texas. And despite the Bureau of Prisons Clinical Practice Manual <u>**requirement**</u>  for an annual colonoscopy be performed for inmates[Poseley] with confirmed documented diagnosed ulcerative colitis – NONE was ever scheduled or completed by Dr. Altenberg or PAs Brutus or Perez!]

7.   <u>**IF**</u> Dr. Altenberg and PA Perez had <u>**NOT**</u> demonstrated complete deliberate indifference to plaintiffs' continual pleas for medical assistance to relieve stomach pain (caused by bleeding ulcers), plaintiff would <u>**NOT**</u> have bled out, passed out and than rushed to emergency medical services via ambulance, whereby RADICAL surgery was required, removing ONE-HALF his stomach and part of his duodenum and resultant 38 day(5½ week) hospitalization just to stabilize Poseley.

8.   <u>**IF**</u> NONE of the above had occurred and Dr. Altenberg, PAs Brutus and Perez; Dr.s Hagerty and Longfellow & PAs Dunigan and Lawrence would <u>**NOT**</u> have denied plaintiff the required 2-3 months of rehabilitation, there would be no requirement for the current hernia surgery.

9.   **IF** Dr.'s Hagerty, Longfellow, PAs Dunigan and Lawrence had not deliberately ignored BOP's own medical procedures regards a Care Level III inmate, instead scheduled Poseley each month for an appointment, arranged for previously diagnosed & required surgies i.e. hip replacement, knee & hernia repair, the June 13, 2009 pain would not be progressive.

10.   **IF** SPC Warden Apker had not LIED in 4/9/10 response to Plaintiff's Request of Staff regards status of his hernia, and **IF** Apker had exercised due diligence before appointing an Executive Officer (Unit Manager Baker) who self-admits she knows NOTHING about medical, Poseley's direct contact regards his medical care, Poseley would **NOT** be in his current progressive degenerative physical and psychological condition of an invalid.

The named defendants in Counts 1, 2, 3 & 4 above, provided, overall deliberate indifferent medical care and assistance ignoring Poseley's health care needs, resulting in further significant and ongoing injury, unnecessary and wanton infliction of pain to Poseley's serious medical needs. Whether by purposeful act or failure to respond to Poseley's pain or medical need, these defendant's in Counts 1, 2, 3 & 4 individually and collectively have caused serious harm by their overall and ongoing deliberate medical indifference.

State the relief you are seeking:

1.   ORDER Plaintiff Poseley's immediate APPEARANCE for the purpose of this Honorable Court to evaluate visually the progressively degenerative physical deformity health status of Plaintiff, a direct result(link) of defendants deliberate indifference.

2.   Assignment of "**Medical Master**" (not necessary to be an attorney/counsel) responsible to intercede and report directly to this Honorable Court regards

status of Plaintiff Poseley's required health care procedures and rehabilitation.

**[continued PAGE 8A]**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___9-1-2010___
                    DATE

_____
SIGNATURE OF PLAINTIFF
Dennis O. Poseley

Barry R. Schotz, 06088-097
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)
(Inmate providing assistance)


_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

<u>**REQUESTED RELIEF**</u>
[continued]

3.   **$37,000,000** for loss of life expectancy, **5-10 years** reduced expected

mortality, **50%** increased risk of cancer AND **<u>Punitive</u>** and **<u>Compensatory</u>** damages

for unnecessary and wanton infliction of pain and ongoing progressively

increasing extreme pain and suffering, as this Honorable Court solely and

unilaterally determines.

4.   Creation of a trust to be fully funded by defendants deferring the

ongoing medical health care costs (including rehabilitation). Said costs

to be determined by this Court following the REQUIRED pending THREE surgeries

and related required rehabilitation.

5.   ORDER Bureau of Prisons to issue Medical Furlough until all surgeries

and rehabilitation are satisfactorily completed. Furlough location to include,

but not limited to Plaintiff's home or required rehabilitation facility.

6.   Judicial Recommendation to Sentencing Court for reconsideration for

downward departure for time served based upon section 3553(b) Plaintiff's

documented material degenerative medical status. [<u>NOTE</u>: November 1, 2010,

Sentencing Commission is to have issued new Sentencing Guidelines enabling

and encouraging Sentencing Courts to more fully consider plaintiff's age

and physical health status.]

7.   Plaintiff respectfully requests and all other relief this Honorable

Court deems appropriate, in the protection of Plaintiff Poseley's Constitutional

Rights a a pro se indigent prisoner plaintiff.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Dennis O. Poseley,
　　　　　　Plaintiff,

vs.

Craig Apker, Warden USP-Tucson, and Does
Prison Administration, Doctors and Guards 1-20,
　　　　　　Defendants

Case No. CV  10-292  CKJ

## APPLICATION FOR WRIT OF HABEAS CORPUS

The undersigned Plaintiff in *propria persona* hereby applies to the captioned court for the **EMERGENCY** issuance of a writ of habeas corpus **ad testificandum** in re motion for **EMERGENCY RELIEF** under his Civil Rights Complaint by a Prisoner, pursuant to 28 U.S.C. § 1343(a) and 42 U.S.C. § 1983, and avers:

1. Dennis O. Poseley, USM No. 80535-008
2. Detained by USP-Tucson, Arizona,
3. Detainee is the Plaintiff in this case and needs **EMERGENCY MEDICAL ATTENTION.**
4. Appearance is necessary on (date) Option of the Court _____ at (time) Court's discretion
   [X] before Judge assigned to this case to visually see the medical status of the Plaintiff.
   [ ] the purpose of giving testimony in the captioned proceeding.

Date: 9-1-2010

Dennis O. Poseley, USM # 80535-008
USP-Tucson
9300 SOUTH WILMOT ROAD
TUCSON, AZ 85706

## WRIT OF HABEAS CORPUS

### Ad Testificandum

in re motion for **EMERGENCY RELIEF** under his Civil Rights Complaint by a Prisoner,
pursuant to 28 U.S.C. § 1343(a) and 42 U.S.C. § 1983.

The instant application is granted and the above-named custodian, as well as the U.S. Marshal for this district, his deputies, and other U.S. Marshals and their deputies, is and are directed to produce the named detainee, on the date, and at the time, and in the place recited above, and thereafter to maintain the said detainee within the jurisdiction of this Court pending the satisfaction of this writ or the further orders of the Court, thereupon to be returned to USP-Tucson unless otherwise ordered by the Court. All parties of this Writ are notified that third party custody of said detainee may be granted as referenced above and that detainee's counsel will be notified prior to any such court order being issued.

Date: _____    _____
　　　　　　　　　　　　　　　　United States District/Magistrate Judge

(Rev. 11/97)